**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE, )
)
       Plaintiff, )
)
v. ) Cr. ID. No. 0805035299
)
)
MONIR GEORGE )
)
       Defendant. )

Date Submitted: July 1, 2018
Date Decided: September 17, 2018

**COMMISSIONER'S REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF, MOTION
FOR AN EVIDENTIARY HEARING, MOTION FOR APPOINTMENT OF
COUNSEL, MOTION TO SET ASIDE CONVICTION AND ORDER A
NEW TRIAL, AND MOTION OF EXCULPATORY EVIDENCE THAT
JUSTIFIES A NEW TRIAL**

Monir George, *pro se.*

**MANNING**, Commissioner:

This 17th day of September 2018, upon consideration of the various motions submitted by defendant Monir George for postconviction relief (hereinafter the "Motion" or "Motions"), I find and recommend the following:

## Facts and Procedural History

Monir George ("Defendant") was found Guilty But Mentally Ill of Murder in the First Degree, Attempted Murder in the First Degree, Reckless Endangering in the First Degree, and three counts of Possession of a Firearm During the Commission of a Felony, on October 29, 2009, following a bench trial. At trial, Defendant was represented by counsel who did not deny that he committed the murder, but rather, argued that he should be found Not Guilty by Reason of Insanity or guilty of Manslaughter based on Extreme Emotional Distress.[1]

Defendant's convictions were affirmed on direct appeal by the Delaware Supreme Court on October 13, 2010.[2] Defendant then filed his first timely motion for postconviction relief, *pro se,* on October 7, 2011.[3] An amended motion for postconviction relief was filed with the assistance of counsel on June 28, 2013. Following extensive briefing, Commissioner Vavala issued a report and

---

[1] Trial Transcript, 10/22/2009, p.193.

[2] *George v. State,* 2010 WL 4009202, *1, (Del. October 13, 2010).

[3] D.I. 121.

1

recommendation that the motion should be denied on March 6, 2014.[4] On May 15, 2014, Judge Jurden issued an Order adopting the commissioner's report after a *de novo* review. The Delaware Supreme Court subsequently affirmed the order denying the motion for postconviction relief on March 24, 2015.[5]

On July 1, 2018, Defendant filed the five motions now before the Court. Excluding the Motion for Appointment of Counsel, all of Defendant's Motions request the same thing—a new trial, and concern the same topics—the testimony of the State's firearms expert, Carl Rhone, and to a lesser extent, the testimony of the then Chief Medical Examiner, Dr. Richard T. Callery. Defendant's Motions were referred to the undersigned commissioner on August 28, 2018. After reviewing the trial transcripts, the previous appeals and motions for postconviction relief, I did not find it necessary to hold an evidentiary hearing based on the nature of Defendant's allegations. Additionally, based on the procedural posture of the case and Defendant's arguments, the Motion for Appointment of Counsel should be denied pursuant to Rule 61(e)(4) because, as discussed in more detail below, the various motions do not meet the pleading requirements of Rule 61(2)(i) or (2)(ii).

The facts of the case, as found by the Delaware Supreme Court in Defendant's direct appeal, are as follows:

---

[4] D.I. 158.

[5] D.I. 169, *George v. State*, No. 285, 2014 (Del. March 24, 2015).

2

The evidence at trial was that, on May 25, 2008, at approximately 7:00 p.m., a fundraising event for St. Mary's Coptic Orthodox Church was being held at the Christiana Hilton in Christiana, Delaware. Malak Michael, a deacon and chief fundraiser for the church, was just finishing a speech to a group of supporters when George approached him and shot him. Michael died on arrival at Christiana Hospital. George also unsuccessfully attempted to shoot Reverend Mina Mina, another member of the church clergy. George was motivated by hatred for the church clergy, whom he believed were corrupt, and by hatred for Michael in particular, whom he blamed for his break-up with his wife.

Testifying at trial were witnesses to the incident, Gigi Phillips, Michael's niece, George Kamel, Vaylet Mikhail, and Sylvia Makar. At the time of the shooting, all four individuals had been on or near the dais where the victim gave his speech. Phillips and Kamel assisted in disarming George after the shooting. Carl Rone, a firearms expert, testified regarding the two Smith & Wesson semi-automatic weapons George brought with him to the hotel. A number of witnesses testified concerning George's pattern of animosity toward the church clergy and his depressed mood prior to the incident. Three experts from the Delaware Psychiatric Center---Robert Thompson, Ph.D., a forensic psychologist, Carol Tavani, M.D., a psychiatrist, and Stephen Mechanick, M.D., also a psychiatrist, testified concerning George's mental state at the time of the incident. Drs. Thompson and Mechanick opined that George was mentally ill at the time of the shooting. Dr. Tavani opined that he was insane at the time of the shooting.[6]

Defendant's claims for postconviction relief quoted verbatim, are as follows:

| | |
|---|---|
| Ground One: | Forensic Firearms expert suspended and arrested. Newly discovered evidence regarding credibility of firearms expert Mr. Carl Rone, who testified at trial on Wed. 10-7-09. He was suspended then arrested for falsifying official records. |
| Ground Two: | The State relied on corrupt experts. State experts gave perjured testimony at trial, and later Mr. Rone was suspended, then arrested. Dr. Richard T. Callery got fired, |

---

[6] *George v. State*, 2010 WL 4009202, *1, (Del. October 13, 2010).

and Dr. Stephen Mechanic changes his opinion in favor of the highest bidder.

Ground Three:    The State submitted false evidence (exhibit #79). Not only the State used corrupt experts, but also could not match exhibit #79 to firearms presented (exhibits #69 and #70), see trial transcripts of 10-7-09, page 144, starting at line 22.

All above grounds were not previously raised. Newly discovered evidence with the suspension [and] arrest of firearms expert Mr. Carl Rone for falsifying official records. The credibility issues were not known during the appeal or postconviction relief (61).

## **Legal Standard**

To prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[7] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires the defendant to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[8]

---

[7] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

[8] *Id.*

4

When a court examines a claim of ineffective assistance of counsel, it may address either prong first; where one prong is not met, the claim may be rejected without contemplating the other prong.[9] Most germane to this case, mere allegations of ineffectiveness will not suffice—a defendant must make and substantiate concrete allegations of actual prejudice.[10] An error by defense counsel, even if professionally unreasonable, does not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[11]

In considering post-trial attacks on counsel, *Strickland* cautions that trial counsel's performance should be viewed from his or her perspective at the time decisions were being made.[12] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting efforts of hindsight. Second guessing or "Monday morning quarterbacking" should be avoided. [13]

---

[9] *Strickland*, 466 U.S. at 697.

[10] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[11] *Strickland*, 466 U.S.at 691.

[12] *Id.*

[13] *Id.*

## Analysis

The procedural requirements of Rule 61 must be addressed before considering the merits of any argument.[14] Defendant's Motions comprise what I determine to be his second attempt at postconviction relief—the first having been denied by the Delaware Supreme Court on March 6, 2015.[15] As a successive motion, Defendant's Motions are governed by Rule 61(d)(2)(i) and 61(i)(2).[16] Because Defendant is alleging newly discovered evidence, his Motions—on their face at least—meet the pleading requirements under Rule 61(d)(2)(i), thus avoiding the procedural bars of Rule 61(i). Accordingly, Defendant's Motions should be reviewed on their merits.

---

[14] *See Younger*, 580 A.2d at 554.

[15] *George v. State*, No. 285, 2014 (Del. Mar. 6, 2015).

[16] Rule 61(d)(2) Second or subsequent postconviction motions. -- A second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted after a trial and the motion either:
(i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or
(ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.

6

Ground One: Defendant's assertion that Mr. Rone, the State's firearms expert, was suspended and then arrested for falsifying official records is indeed accurate. It is a matter of public record that an arrest warrant was issued for Mr. Rone on May 3, 2018.[17] Mr. Rone was charged with Theft by False Pretenses and Falsifying Business Records. As of the date of this Report, the charges are still pending before the Superior Court in Kent County. Based on my review of the charges and the Affidavit of Probable Cause, it is apparent that Mr. Rone is alleged to have provided false time sheets to his employer, the Delaware State Police ("DSP"), and therefore received compensation from DSP for work that was not performed on at least 79 different dates in 2017. There is no allegation that Mr. Rone was engaging in similar misconduct at the time Defendant's trial in 2009.

What is also apparent, however, is that nothing regarding the dismissal of Mr. Rone from DSP and his subsequent arrest leads me to question the reliability of the work he actually performed in connection with Defendant's trial. Moreover, Defendant has presented no evidence tending to show that the trial testimony given by Mr. Rone was in any way false or misleading. My review of the facts leads me to conclude that Mr. Rone's testimony was relatively uncontroversial and far from central to the determination of guilt or innocence. Considering that the actual murder

---

[17] *See State v. Carl Rone*, Cr. I.D. No. 1805001031, Arrest Warrant and Affidavit of Probable Cause.

7

was witnessed by multiple people who testified at trial, that Defendant was apprehended at the scene along with the murder weapon, and presented a mental health defense, Mr. Rone's testimony was nearly superfluous. Furthermore, Mr. Rone's testimony that the murder weapon had misfired, evidence that supported the attempted murder charge, was not disputed.

No evidence has been presented to indicate that Mr. Rone was engaging in the alleged unlawful behavior back in 2009. Although this misconduct evidence can be considered "newly discovered" in the most general sense, Defendant has failed to show how it prejudiced him or creates a strong inference of actual innocence because it occurred subsequent to the trial and there is no evidence to indicate that Mr. Rone's testimony was unreliable or invalid.

Ground Two: Defendant's statement that Dr. Callery was fired is also accurate. It is a matter of public record that Dr. Callery was terminated from his position as Chief Medical Examiner for the State of Delaware subsequent to Defendant's trial. Dr. Callery conducted the autopsy of the murder victim and testified as to the results at trial. Dr. Callery's testimony consisted largely of the fact that the victim died as the result of a bullet passing through his heart from a single gunshot.[18] That conclusion was not challenged on cross-examination.[19] In his

---

[18] Tr. Transcript, 10/7/2009, p. 169-172.

[19] *Id.* at p.177.

8

Motion, Defendant has presented no evidence that calls into question Dr. Callery's opinion as to the victim's cause and manner of death. Indeed, the misconduct that Dr. Calley pled guilty to did not involve the competency of his work as a medical examiner.[20] Similar to the testimony of Mr. Rone, Dr. Callery's testimony was far from central to the case considering that the murder was witnessed by multiple people who testified that they saw Defendant shoot the victim with a handgun.

Finally, Defendant makes the assertion that "Dr. Stephen Mechanic changes his opinion in favor of the highest bidder." This statement is conclusory, unsupported by any facts or the record, and therefore fails to meet the burden for relief under Rule 61 and *Strickland*.

Ground Three: Defendant argues that the State submitted false evidence (exhibit #79) and that the State used a "corrupt expert[]," who could not match exhibit #79 to firearms presented (exhibits #69 and #70). Defendant cites to the trial transcripts of October 7, 2009, on page 144, starting at line 22.

---

[20] *See State v. Callery*, Cr. I.D. No. 1505007228. Per the indictment, Count One alleged that between January 1, 2010, and December 31, 2013, Dr. Callery, "did, as a public servant and while intending to obtain a personal benefit, perform official functions in a way intended to benefit his own property or financial interests under circumstance in which his actions would not have been reasonably justified in consideration of the factors which ought to have been taken into account in performing official functions by directing employees of the Office of the Chief Medical Examiner to perform duties related to his private business." Count Two of the indictment alleged similar misconduct.

My review of the transcripts cited by Defendant reveals that his argument is misplaced, undoubtedly because Defendant does not understand the testimony offered by Mr. Rhone. Mr. Rone testified that State's Exhibit #79 was a "copper–bullet jacket fragment" and that "[he] couldn't match it to one of the firearms, so I couldn't actually even speculate after that that it was a nine-millimeter." When asked if this was because it was "pretty mangled," Mr. Rone responded: "Yeah. It's just a bullet fragment which would be even less than a bullet jacket. It's just a small section of it." [21]

Although Defendant is correct that Mr. Rone could not match the bullet fragment to any of the firearms in this case, that is because what was left of the projectile was too mangled for a comparison—which is exactly what Mr. Rone said. There is nothing in Defendant's Motion, or the trial record, to support the allegation that Mr. Rone was a "corrupt expect" or that this testimony was in any way misleading or prejudiced Defendant's right to a fair trial.

---

[21] Trial Transcript, 10/7/2009, p.144.

## Conclusion

Based on the foregoing, all of Mr. George's claims should be **Denied**.

**IT IS SO RECOMMENDED.**

Bradley V. Manning,
Commissioner

OC:   Prothonotary
cc:     Defendant via first class mail